**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL KITCHEN | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 6781 |
| | ) | |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| MATTHEW TEGTMEIER, MICHAEL | ) | |
| CURRY, JOSEPH FERRARO, CITY OF | ) | |
| CHICAGO and UNIDENTIFIED | ) | |
| OFFICERS. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' Matthew Tegtmeier ("Tegtmeier"), Michael

Curry ("Curry") and Joseph Ferraro ("Ferraro") (collectively the "Defendants") Motion

for Judgment as a Matter of Law. For the following reasons, the Court grants the motion

in part and denies the motion in part.

**EVIDENCE PRESENTED AT TRIAL**

For purposes of this motion, the factual recitations are construed in favor of the

non-moving party, Plaintiff Samuel Kitchen ("Kitchen"). *Molnar v. Booth*, 229 F.3d

593, 597 (7th Cir. 2000). To the extent this Court is reviewing the jury's verdict, the

facts are viewed in the light that supports the verdict. *McCalpine v. Foertsch*, 870 F.2d 409, 414 (7th Cir. 1989).

On the night of August 3, 2013, Defendant Officers Tegtmeier and Curry pulled Kitchen over for driving the wrong way down a one-way street. Tegtmeier, suspecting Kitchen was driving under the influence of alcohol, asked Kitchen to step out of his car and had him perform a field sobriety test.[1] After its completion, Tegtmeier placed Kitchen in the back of his squad car and transported him to the 10th District Police station.

Kitchen arrived at the police station at around 3:00 am. Upon his arrival, Tegtmeier patted him down[2] and placed him in a processing room. After a twenty-minute observational period, Tegtmeier asked Kitchen to undergo a breathalyzer test. Kitchen refused, and according to him, was tased in order to submit to the breathalyzer.

Tegtmeier accounts a different version of events, testifying that Kitchen willingly took the test, failed, and got upset upon learning that he had to go through processing.[3] Kitchen then became verbally resistant, prompting Tegtmeier into believing that Kitchen would require physical force to move through processing.

---

[1] Kitchen was neither combative nor resistant when he performed the test. A police in-camera system captured the interaction, confirming Kitchen's testimony that he was neither combative nor resistant.

[2] Tegtmeier patted Kitchen down to ensure that he did not have any weapons on him. It is undisputed that Kitchen did not have any weapons on him throughout the night.

[3] It is undisputed that Kitchen took the breathalyzer test and his alcohol content level was two times over the legal limit.

Acting on this concern, Tegtmeier asked Curry to calm Kitchen down as he went to get Defendant Lieutenant Officer Ferraro to assist with the situation. As Tegtmeier retrieved Ferraro, Curry proceeded to have a conversation with Kitchen. Curry testified that throughout their conversation Kitchen had calmed down and never felt threatened by him.

Ferraro then entered the room and proceeded to have a conversation with Kitchen. During the conversation, Ferraro ordered Kitchen to be put into handcuffs. As Kitchen was being handcuffed, the Defendants testified Kitchen actively resisted by pulling away his hands. As a result, Ferraro ordered Curry to perform an emergency take-down. While Ferraro and Curry were in the process of handcuffing Kitchen, Tegtmeier tased Kitchen on his own accord. Tegtmeier testified that he had given a pre-warning before tasing ("first tasing") Kitchen. Kitchen testified that he became unconscious after the first tasing. Approximately thirteen seconds after the first tasing, Tegtmeier, unbeknownst to Ferraro and Curry, again tased ("second tasing") Kitchen.

In Kitchen's arrest report, Tegtmeier states that the first tasing effectively allowed Curry and Ferraro to handcuff Kitchen. However, because Kitchen "continued to [flail] his legs and pull away from [the] officers," Tegtmeier deployed a second tasing. Kitchen was successfully subdued after the second tasing.

At trial, Tegtmeier testified that the first tasing was not effective as Kitchen was still resisting the arrest by flailing his arms. He testified that he was not certain when

Kitchen got handcuffed in relation to the first tasing.  He further stated that he tased Kitchen a second time as Kitchen continued to flail his legs.

On August 3, 2015, Kitchen filed suit against Ferraro, Curry, and Tegtmeier in their individual capacities for excessive force and failure to intervene.  Kitchen also sued the Defendants collectively, alleging a conspiracy claim.

On October 19, 2018, following a three-day jury trial, the Defendants were found not guilty of conspiracy.  As it pertained to charges in their individual capacities, the jury found Tegtmeier: (1) guilty of excessive force; and (2) guilty for the failure to intervene.  The jury found Curry and Ferraro each: (1) not guilty of excessive force; and (2) not guilty for failure to intervene.

Defendants have filed this instant motion pursuant to Federal Rule of Civil Procedure 50, articulating that Kitchen failed to present evidence that supports a jury finding against Tegtmeier for (1) the imposition of punitive damages, (2) excessive force, and (3) failure to intervene.

## LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Mohr v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. Of City of Chicago*, 155 F. Supp. 2d 923, 926 (N.D. Ill. 2001) (citing Fed. R. Civ. P. 50(a)(1)).  This standard "mirrors" that of summary judgment, such that "the inquiry

under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

This Court ascertains whether there exists "any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed." *Pope v. Shafer*, 86 F.3d 90, 91 (7th Cir. 1996) (citations omitted). This Court views the evidence in the light most favorable to Kitchen and draws all reasonable inferences in his favor. *Id.* Because "[a]ttacking a jury verdict is a hard row to hoe," *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1043 (7th Cir. 1999), a jury verdict is only disturbed if "no rational jury could have brought in [that] verdict." *Id.*

## I. Monetary Damages Awarded to Kitchen

### A. Compensatory Damages

We first evaluate whether the jury had a sufficient evidentiary basis in finding that Tegtmeier must pay Kitchen $10,000 in compensatory damages. The Seventh Circuit uses three criteria to review a compensatory damages award: (1) whether the award is "monstrously excessive"; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards in similar cases. *Tullis v. Townley Eng'g Mfg. Co.*, 243 F.3d 1058, 1066 (7th Cir. 2001). Because the "Seventh Circuit views the 'monstrously excessive' standard as 'rather vague,' it has suggested that it merged with the rationality inquiry." *Waits v. City of Chi.*, 2003 WL 21310277, at *2 (N.D. Ill. 2003).

This Court finds that the $10,000 compensatory damages has a rational connection to the evidence presented at trial. The jury was presented with evidence in the form of Kitchen's own testimony regarding his physical pain and suffering following the first and second tasings. Kitchen also offered substantial evidence regarding his emotional distress following Tegtmeier's activities. *See Tullis*, 423 F.3d at 1068 ("[a]n award for non-pecuniary loss can be supported … solely by plaintiff's testimony about his or her emotional distress."). In addition, Kitchen provided the jury with evidence that, as a result of being tased, he went to a hospital to undergo treatment.

The jury's $10,000 compensatory damage award is in line with comparable cases. *See Taliferro v. Augle*, 757 F.2d 157 (7th Cir. 1985) (the court awarding plaintiff $22,000 in compensatory damages when claiming police had arrested him for no reason and had some of his teeth knocked out); *see also Terrel v. Village of University Park*, 1994 WL 30960 (N.D. Ill. 1994) (the court awarding plaintiff $5,000 in compensatory damages after being arrested, slapped, and slammed into a police car).

Accordingly, after carefully considering the totality of the evidence, Kitchen provided sufficient evidence to support a jury verdict affording him $10,000 in compensatory damages.

### B. Punitive Damages

Defendants next articulate that Kitchen did not provide sufficient evidence for a jury to support a finding of punitive damages. "It should be presumed that a plaintiff has been made whole by compensatory damages, so punitive damages should be

awarded only if the defendant's culpability is so reprehensible to warrant the imposition

of further sanctions to achieve punishment or deterrence." *Waits*, 2003 WL 21310277,

at *4 (citing *State Farm Mutual Auto. Ins. Co. v. Campbell*, 123 U.S. 1513, 1521

(2003)).

"The standard judicial formulation of the purpose of punitive damages is that it

is to punish the defendant for reprehensible conduct and to deter him and others from

engaging in similar conduct." *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996) (citing

*Memphis Community School District v. Stachura*, 447 U.S. 229, 307 n. 9 (1986)). In a

42 U.S.C. § 1983 action, punitive damages are awarded if "the defendant's conduct is

shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30,

56 (1983). Kitchen must prove that Tegtmeier's behavior reflects "reckless or callous

indifference" as to his rights. *Id.* at 51.

Per the jury instructions, this Court established that punitive damages may be

awarded only where there is a showing that Defendants' conducted themselves

maliciously or with reckless disregard for Plaintiff's rights: "Conduct is malicious if it

is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff.

Conduct is in reckless disregard of Plaintiff's rights if, under the circumstances, one or

more of the Defendants simply did not care about Plaintiff's safety or rights."

We find that Kitchen failed to present evidence to support his claim for punitive

damages. Kitchen failed to present any evidence that showed any of the Defendants

acted due to an evil motive or intent, nor did it involve a reckless or callous indifference to his welfare.

At trial, Tegtmeier testified that he had been trained to use tasers and had previously done so during arrests. He further explained that based on his trainings and experiences, the deployment of a taser is the most effective tool an officer can use when attempting to subdue a resister with the least risk of injury to the subject and involved officers.

When asked why no alternative methods to gain control were used, the Defendants consistently testified that an open hand strike, pepper spray, pressure point tactics, or utilization of a canine unit would have only escalated the situation further. With regards to Ferarro, he took no part in the use of force, and Curry performed the emergency take-down only after given the orders to do so.

Indeed, this Court expressed its concerns at side bar when discussing the applicability of punitive damages to this case. Kitchen has failed to provide any evidence that would overcome this Court's concern. Accordingly, because there is no evidence in the record to suggest that the Defendants acted extraneous to their trainings, a reasonable jury would not have a sufficient evidentiary basis to conclude that punitive damages are warranted.

## II.    Excessive Force Claims

Defendants next argue that Kitchen failed to put forth sufficient evidence that supports a jury finding that the Defendants used excessive force.

In a 42 U.S.C. § 1983 excessive force case, the Court views the events at issue from the perspective of a reasonable officer at the time of the arrest. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). The Court's analysis is based on an "objective reasonableness" standard. *Sallenger v. Oakes*, 472 F.3d 731, 739 (7th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). While "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," this Court must consider all facts and circumstances of the arrest, including: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citations omitted).

### A.    Tegtmeier

A reasonable jury could find Tegtmeier guilty of excessive force. First, it is undisputed that Kitchen was not arrested for a severe crime and had remained unarmed throughout the night.

Second, the Defendants did not provide the jury with any evidence that Kitchen posed an immediate threat to their safety. In fact, none of the Defendants testified that Kitchen either assaulted, battered, or posed any sort of physical threat to them throughout the night.

Third, it is undisputed that throughout the night Kitchen did not attempt to flee. According to Kitchen, he was not resisting; according to the Defendants, he was.

The Defendants defend their use of force by claiming that Kitchen actively resisted being handcuffed by pulling back his arms. Before the first tasing, Ferraro and Curry both testified that they had ahold of Kitchen's arms as he was on the ground. Kitchen presented evidence showing that all three Defendants were much larger than him. Accordingly, a reasonable jury could determine that the Defendants had Kitchen under their control at this point.

However, despite this control, Tegtmeier covertly tased Kitchen, who testified that he had been subsequently knocked out as a result. Tegtmeier stated in Kitchen's arrest report that the first tasing allowed Curry and Ferraro to handcuff Kitchen. However, at trial, Tegtmeier had testified that in relation to the first tasing, he "was not sure when the handcuff went on." Nevertheless, it is undisputed that Tegtmeier again tased Kitchen, and Kichen provided evidence showing that tasing occurred while he was under the Defendants' control. *See Abbott*, 705 F.3d at 730 ("[C]ourts generally hold that it is unreasonable for officers to deploy a taser against a misdemeanant who is not actively resisting arrest."). Accordingly, Kitchen provided a jury with sufficient evidence to find Tegtmeier guilty of excessive force.

### B.     Curry and Ferraro

Kitchen has failed to provide evidence to support a claim that Ferraro and Curry are guilty of excessive force. Ferraro had testified that at most, he held on to Kitchen's arm as Curry pulled him down to perform the emergency take-down. Similarly, Kitchen failed to provide any evidence that Curry's take-down maneuver was done in a violent

or overly forceful manner. Kitchen failed to show that the takedown resulted in any sort of injury or physical marks, and even testified that he was never subjected to an emergency take-down in the first place. There was no evidence that showed Curry took part in the tasings. The jury's verdict was consistent, finding both Curry and Ferraro not guilty of all charges against them.

Accordingly, Kitchen has failed to establish a legally sufficient basis in the record to allow a jury to find Curry or Ferraro liable for excessive force.

## III. Failure to Intervene

The jury found Tegtmeier guilty for failing to intervene when Curry performed an emergency take-down based on Ferraro's orders. Kitchen also alleged that Ferraro and Curry both failed to intervene when Tegtmeier tased Kitchen.

"[P]olice officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

> "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring."
> (*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)); *see also Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005))

### A. Tegtmeier

The jury found Tegtmeier guilty for failing to prevent Curry and Ferraro from performing an emergency take-down. The court finds that Kitchen has failed to provide a jury with evidence to support this conclusion.

The primary concern for a failure to intervene claim is an underlying constitutional violation. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("If Plaintiff was unsuccessful on his excessive force claim, there would be no failure to intervene claim."). Here, the jury found both Curry and Ferraro not guilty for excessive force when the emergency take-down was performed. Accordingly, because Kitchen's constitutional rights were not violated, his assertion must fail as to Tegtmeier's alleged failure to intervene another's constitutional violation.

### B. Curry and Ferraro

Kitchen did not present the jury with sufficient evidence to find Curry and Ferraro guilty for failing to prevent Tegtmeier from tasing Kitchen. When Tegtmeier first tased Kitchen, Curry and Ferraro were attempting to secure Kitchen in handcuffs. Curry and Ferraro both testified that they could not recall whether Tegtmeier gave any sort of pre-warning before the first tasing and were unaware of what happened until they heard the taser's sound go off. Kitchen also testified that he first got tased as he was speaking with Ferraro, further indicating that Curry and Ferraro were unaware that Tegtmeier was going to tase Kitchen.

Tegtmeier deployed the second tasing thirteen seconds after the first. Indeed, the jury was presented with evidence showing that Tegtmeier had again tased Kitchen as Curry and Ferraro were attempting to get Kitchen into handcuffs. Because of such a short time frame between the first and second tasings, Curry and Ferraro had no realistic opportunity to interevene. Accordingly, there is compelling evidence to support a jury finding that neither Ferraro nor Curry could have intervened to stop either tasings.

## IV. Qualified Immunity

Defendants argue that Tegtmeier is entitled to qualified immunity on his excessive force and failure to intervene charges. "The doctrine of qualified immunity shelters government officials from civil liability in their individual capacities as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kies v. City of Aurora*, 149 F. Supp. 2d 431, 425 (N.D. Ill. 2001) (citing *Harlow v. Fitgerald*, 457 U.S. 800, 818 (1982)). Kitchen has the burden of demonstrating that: (1) a constitutional violation transpired, and (2) that the pertinent constitutional standards were clearly established at the time of the violation. *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996).

Kitchen has an established right under the Fourth Amendment to be free from excessive force. *Abbot v. Sangamon County, Ill.*, 705 F.3d 706 (7th Cir. 2013) ("[W]e conclude that it [was] clearly established on June 25, 2007, that it is unlawful to deploy a taser in dart mode against a nonviolent misdemeanant who had just been tased in dart mode and made no movement after the first tasing … Prior to 2007, it was well

established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects.").

Accordingly, Kitchen has demonstrated that his constitutional rights were violated when Tegtmeier was found guilty of using excessive force against him. As a result, Tegtmeier is not shielded by the qualified immunity doctrine.

## V.   Conspiracy

Kitchen next alleged a conspiracy claim against the Defendants. To establish a conspiracy claim, Kitchen must demonstrate that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1016 (7th Cir. 2000).

The record is devoid of any connotations that all three Defendants worked together to deprive Kitchen of his constitutional rights. Accordingly, no reasonable jury could find the Defendants guilty of conspiracy.

## CONCLUSION

For the reasons stated above, Judgment shall be entered against Tegtmeier for his use of excessive force based on the verdict of the jury. Judgment in Tegtmeier's favor shall be entered as to the charge of failure to intervene and as to punitive damages. Judgments of not guilty shall be entered as to Defendants Michael Curry and Joseph Ferraro based on the jury's verdicts as to all charges against them and the evidence presented as to their conduct.

_Charles P. Kocoras_
_____

Dated:  11/27/2018

Charles P. Kocoras
United States District Judge